**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE,<br>*Plaintiff,*<br>v.<br><br>MOYER & SON, INC.,<br><br>MOYER & SON, INC. d/b/a MOYER PEST CONTROL,<br><br>MOYER & SON INC.,<br><br>MOYER & SON,<br><br>and<br><br>MOYER PEST CONTROL,<br><br>*Defendants.* | Case No. 2:26-cv-6337 |

**COMPLAINT**

**I. THE PARTIES:**

1. Plaintiff, who seeks to proceed anonymously as, "John Doe," in the instant action, is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides in Philadelphia County, Pennsylvania, at [redacted]. Plaintiff has filed a Motion to Proceed Anonymously and Brief in support thereof on this same date requesting leave of Court to file the instant Complaint anonymously as "John Doe," and to redact his home address from the Complaint. Defense Counsel has concurred in the request contingent upon whether or not Plaintiff will seek a waiver of service. Plaintiff is agreeable to providing Notices of Lawsuit and Waiver Forms to Defense Counsel. Defendants have consented to Plaintiff's anonymity request.

2. Defendant, Moyer & Son, Inc., was, at all times relevant hereto, a Pennsylvania corporation, and Plaintiff's employer, with a principal office and principal place of business located at 5123 W. Chester Pike, Newtown Square, PA 19073.

3. Defendant, Moyer & Son, Inc. d/b/a Moyer Pest Control, was, at all times relevant hereto, a Pennsylvania corporation, and the Plaintiff's employer, with a principal office and principal place of business located at 5123 W. Chester Pike, Newtown Square, PA 19073.

4. Defendant, Moyer & Son Inc., was, at all times relevant hereto, a Pennsylvania corporation, partnership, limited liability company, or other business organization or business entity, and constituted Plaintiff's employer, with a principal office and principal place of business located at 5123 W. Chester Pike, Newtown Square, PA 19073.

5. Defendant, Moyer Pest Control, was, at all times relevant hereto, a Pennsylvania corporation, partnership, limited liability company, or other business organization or business entity, and constituted the Plaintiff's employer, with a principal office and principal place of business located at 5123 W. Chester Pike, Newtown Square, PA 19073.

6. At all times relevant hereto, Defendants employed Plaintiff.

## II. JURISDICTION & VENUE:

7. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

8. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims as those claims arise out of the same set of operative facts as the federal claims.

9. This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply

with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

10. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are "alleged to have been committed" in this judicial district, "the employment records relevant to such practice[s] are maintained and administered" in this judicial district, and Plaintiff "would have worked" in this judicial district "but for the alleged unlawful employment practice[s]." 42 U.S.C. § 2000e-5(f)(3).

11. In the alternative, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because Defendants conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. At all times relevant hereto, Plaintiff was employed by and working for Defendants in this judicial district.

12. At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## III. <u>EXHAUSTION OF APPLICABLE ADMINISTRATIVE REMEDIES:</u>

13. Plaintiff has exhausted administrative remedies by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The Notices of Right-to-Sue received by Plaintiff from the EEOC with respect to this matter are attached hereto as Exhibits "A" and "B," and have been redacted of Plaintiff's name and the address of his residence consistent with Plaintiff's Motion to Proceed Anonymously filed on this same date.

Plaintiff requests leave of Court to proceed anonymously and to redact the address of his residence from the Complaint.

## IV. CLAIMS FOR RELIEF:

### COUNT I:
### HOSTILE WORK ENVIRONMENT BASED ON SEXUAL ORIENTATION AND/OR SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*(1)(a), *et seq.*
**(Plaintiff, John Doe v. Defendant, Moyer & Son, Inc., Moyer & Son, Inc. d/b/a Moyer Pest Control, Moyer & Son Inc., Moyer & Son, and Moyer Pest Control)**

14. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

15. Plaintiff seeks to recover for the harassment and the hostile work environment he experienced while employed with Defendants. Plaintiff suffered harassment and a hostile work environment on account of Plaintiff's sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes. The facts which support this are as follows:

16. Plaintiff identifies as gay and as gender fluid. Defendants had notice or knowledge of Plaintiff's sexual orientation, gender identity, and/or perceived or assumed Plaintiff to be gay.

17. Plaintiff was employed as a certified Pest Control Technician by Defendants. Plaintiff had been employed by Defendants since in or about June 2022 and he worked for Defendants for approximately two (2) going on three (3) years—approximately two (2) years and nine (9) months going on ten (10) months—in the role of a certified Pest Control Technician for Defendants. Defendants' main office is located in Newtown Square, Pennsylvania. Plaintiff began employment as an exterminator assigned to the Bucks County route and was then assigned to the Philadelphia route.

18. Plaintiff had a certification and worked for Defendants since June 2022 as a certified Pest Control Technician. Plaintiff completed Defendants' three-month introductory

period to Defendants' satisfaction. Plaintiff received multiple pay increases during his employment with Defendants due to satisfactory performance and meeting and/or exceeding expectations. Plaintiff was objectively qualified for the position Plaintiff held with Defendants.

19. During Plaintiff's employment with Defendants, Plaintiff was subject to a hostile work environment/harassment on the basis of his sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes, including, by way of example, to wit:

a. In or about July 2022, or during a time shortly after Plaintiff began employment with Defendants, Plaintiff attended a work-related event held outside of the office called the "Moyer 5K, Fitness Walk, and Kids' Fun Run." Plaintiff attended with his then-husband. Plaintiff recollects that Mr. Rusty Kisner (sp.), a fellow Pest Control Technician and coworker at the time of the occurrence, who was later honored with a promotion to a supervisor/manager position by Defendants, appeared to intentionally ignore Plaintiff and his then-husband. Plaintiff subsequently mentioned that this occurred with respect to Mr. Kisner (sp.) to Mr. Anthony Keo, supervisor/manager, on or about July 2022. Mr. Keo responded matter-of-factly, "It's probably because you're gay" and Mr. Kisner (sp.) "is very religious," or words to that effect.

b. In or about Plaintiff's first year of employment, Plaintiff recollects a telephone conversation between Plaintiff, Mr. Anthony Keo, a supervisor/manager, and Mr. Tony Keo, Pest Control Technician and a co-employee of Plaintiff. Ms. Holly Becker, who was a former Pest Control Technician with Defendant no longer working with Defendant, and Mr.

John Mealing, Pest Control Technician with Defendant, were also present on the call. During the conversation, Mr. Anthony Keo, supervisor/manager, and Mr. Tony Keo, coworker, both referred to another employee who was non-binary as being an “it.” Mr. Anthony Keo and Mr. Tony Keo are brothers. Plaintiff points out that the employee who was referred to in this manner is believed to have subsequently left employment with Defendant. It is believed that the individual left employment with Defendant at least in part because of discriminatory treatment the individual received while employed with Defendant.

c. In or about 2023, while at Defendants’ Plymouth Meeting location, Mr. Tony Keo, coworker, slapped Plaintiff’s rear-end hard, and grabbed it with a full hand. Mr. Tony Keo, coworker, then laughed.

d. In or about 2023, Mr. Anthony Keo stated to Plaintiff that Mr. Keo thought Plaintiff was “fucking disgusting” and referred to Plaintiff as a “nasty bitch,” or words to that effect. It is averred that Mr. Anthony Keo was not observed by Plaintiff to speak in the same manner to, or in the same manner about, similarly situated employees who did not share Plaintiff’s protected status, or who were not LGBTQ+.

e. Toward the middle of Plaintiff’s employment, during a timeframe, Plaintiff recollects, where he was being supervised by Mr. Anthony Keo, and in front of Mr. Dave Schumacher, another supervisor/manager employed by Defendants, Mr. John Mealing, another supervisor/manager employed by Defendants, and Mr. Tony Keo, coworker, at that time Mr. Anthony Keo,

supervisor, asked what Plaintiff identified as, or words to that effect. Plaintiff communicated that Plaintiff is gender fluid and accepts any pronouns, including "he," "she," or "they." Mr. Anthony Keo, supervisor, responded, "So you're an it?", or words to that effect. Plaintiff responded, "No, my pronouns are 'he,' 'she,' 'they,'" or words to that effect. Mr. Anthony Keo, supervisor, then laughed. Mr. Tony Keo, co-employee, also laughed.

f. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Mr. Anthony Keo, a supervisor/manager, communicated to Plaintiff that Mr. Dennis Murphy, a supervisor/manager, had asked Mr. Keo, "Did you know [Plaintiff's] gay?", using Plaintiff's first name, or words to that effect.

g. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Plaintiff recollects that he was standing with Mr. Anthony Keo, supervisor, and Mr. Jim Hudson, another supervisor. Mr. Keo stated to Mr. Hudson in front of Plaintiff, using Plaintiff's first name, "[Plaintiff's] gay." Mr. Hudson said, "No," in response. Mr. Keo stated, "No, for real, he's gay," or words to that effect. Another coworker, a Pest Control Technician, walked up to join the group. Mr. Anthony Keo then stated to Plaintiff's coworker, who had just walked up to join the group, "He's gay," again referring to Plaintiff.

h. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Plaintiff approached Mr. Anthony Keo,

supervisor, and had asked to take a few days off work for his mental health, or words to that effect. Mr. Anthony Keo, supervisor, responded that Plaintiff must be one of "those types of people," or words to that effect. Mr. Keo stated to Plaintiff, "Those types of people are a waste of air and should just kill themselves," or words to that effect.

i. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Mr. Anthony Keo, supervisor/manager, commented to Plaintiff, "Your husband's getting fucked in Colombia," or words to that effect. Plaintiff's then-husband was in Colombia at the time.

j. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Mr. Anthony Keo, supervisor/manager, commented to Plaintiff, "How does it feel to be a disappointment to your family because you're gay?", or words to that effect.

k. In or about June 2024, Plaintiff requested from supervisor, Mr. Anthony Keo, for Plaintiff to be able to wear something for Pride Month, or words to that effect. Mr. Keo responded, "No." Mr. Keo did not provide a reason why. It is not believed that an employee wearing something to commemorate Pride Month would have violated the employee dress code in any manner.

l. On or about one occasion, Plaintiff best recollects as being in or about the Summer of 2024, Defendants permitted employees to wear casual clothing rather than their uniforms to a work-related event held offsite. Plaintiff dressed in a more feminine style of clothing for the event. When Mr.

Anthony Keo, supervisor, saw Plaintiff, Mr. Keo responded, "Wow, why did you come dressed like that?", or words to that effect, then laughed at Plaintiff.

m. Plaintiff also recollects that, during a timeframe more in the beginning toward the middle of Plaintiff's employment, Plaintiff had his nails done professionally at a nail salon. Following an extermination at a customer's home, Mr. Anthony Keo, supervisor, observed Plaintiff's nails were done professionally and commented, "You're a man," "That doesn't look good," "Why would you do that?", and stated that, "The customer was looking at you weird because of your nails," or words to that effect. Plaintiff believes that this was an issue that Mr. Anthony Keo, supervisor, had with Plaintiff. Plaintiff does not believe the customer was actually concerned about Plaintiff's nails.

n. Plaintiff also recollects that, during a timeframe more toward the middle of Plaintiff's employment, that a similarly situated employee, Marissa (sp.) Last Name Unknown ("LNU"), who is not believed to be LGBTQ+, was permitted by Defendants to wear leggings to work instead of cargo pants during the time she worked as a Pest Control Technician for Defendants. Plaintiff made a comment to supervisor, Mr. Anthony Keo, about whether Plaintiff was allowed to wear leggings. Mr. Keo responded that Plaintiff was not permitted to wear leggings to work.

o. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Mr. Anthony Keo, supervisor/manager, referred to Plaintiff as a "faggot" (hereinafter "f----t").

p. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Mr. Tony Keo, coworker and fellow Pest Control Technician, who is Mr. Anthony Keo's brother, used the slur, "f----t," more than once, in reference to Plaintiff.

q. In addition, in or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Mr. Tony Keo, coworker, stated to Plaintiff on the phone, "Faaaaa—-. I didn't say the word. I said you're a fabulous guy," or words to that effect.

r. In or about 2024, during a timeframe before December 17, 2024, to the best of Plaintiff's recollection, Mr. Tony Keo, coworker, also called Plaintiff a "f----t." When Plaintiff objected, Mr. Keo responded, "What? I just called you a bundle of sticks," or words to that effect.

s. On or about December 17, 2024, Mr. Tony Keo, coworker, referred to Plaintiff as a "f----t," again, while on the phone. Mr. Tony Keo, coworker, referred to Plaintiff as a "f----t" multiple times during the telephone conversation. A former co-employee, Ms. Becker; a current co-employee, Mr. Mealing; and supervisor, Mr. Anthony Keo, were believed to be on the phone at the time. Plaintiff stated that he was "going to go to HR," or words to that effect. Mr. Tony Keo, coworker, stated, "Shut the fuck up," to Plaintiff.

20. On or about December 17, 2024, Plaintiff informed Ms. Futchko, Mr. Hudson, and Mr. Schumacker that he was being referred to by the slur, "f----t," multiple times, including specifically by Mr. Tony Keo, coworker, on that date.

21. Following Plaintiff's report of harassment to the Human Resources Manager, Ms. Futchko, on or about December 17, 2024, approximately within the next couple of days, to the best of Plaintiff's recollection, Mr. Anthony Keo, supervisor, contacted Plaintiff by phone and stated, "Keep my fucking name out of your mouth," "I don't want to be involved in this," and "This is between you and my brother," meaning Mr. Tony Keo, or words to that effect.

22. Ms. Futchko had stated that if there was anything else that came to mind to email or call her about it. Plaintiff e-mailed Ms. Futchko to bring to her attention that the supervisor, Mr. Anthony Keo, had also used the slur, "f----t," on a prior occasion to refer to Plaintiff like Mr. Tony Keo had. Plaintiff informed Ms. Futchko that both men, including the supervisor and the coworker, had called Plaintiff the slur. Plaintiff also informed Ms. Futchko what Mr. Anthony Keo, supervisor, had said to Plaintiff when he called Plaintiff and told Plaintiff, "Keep my fucking name out of your mouth," "I don't want to be involved in this," and "This is between you and my brother," or words to that effect. Ms. Futchko or another employee of Defendants did not take any action and/or did not take adequate action in response to Plaintiff's additional notification to them that Mr. Anthony Keo, supervisor, had been involved in calling Plaintiff the slur. Defendants did not take prompt or appropriate action in response to Plaintiff's additional information to prevent, correct, and remedy a hostile work environment/harassment committed by supervisors and co-employees, including Mr. Anthony Keo and Mr. Tony Keo, and/or Plaintiff alleges that sufficient action was not taken on that additional information.

23. A couple of days later, in or about December 2024, to the best of Plaintiff's recollection, Ms. Futchko followed up with Plaintiff. Plaintiff recollects that Ms. Futchko responded to Plaintiff that, as part of the result of her investigation, that "Tony Keo said that he was joking," or words to that effect. Plaintiff did not recall Ms. Futchko referenced Mr. Anthony Keo, supervisor, as part of her investigation, at that time. Plaintiff reminded Ms. Futchko that Mr. Anthony Keo, supervisor, had also used the slur on a prior occasion to refer to Plaintiff. Defendants did not take action or sufficient or adequate action on Plaintiff's complaint of discrimination and harassment. Defendants failed to adequately investigate Plaintiff's complaint considering the conduct to constitute "joking," when instead Plaintiff contends the conduct was not "joking." Defendants continued to characterize the harassing conduct as "joking" to the EEOC in Defendants' Position Statement. Under no circumstance did Plaintiff consider the harassment to be a joke. Plaintiff did not laugh. Plaintiff had asked employees to stop using the slur. The conduct Plaintiff complained of, even the use of the slur, "f----t," multiple times, in and of itself, constitutes subjectively and objectively offensive, severe and pervasive harassment in the workplace. Defendants did not provide prompt and appropriate action to prevent, correct, and remedy harassment and a hostile work environment based on sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes.

24. Further harassment and discrimination continued after Plaintiff's complaint, and Plaintiff experienced retaliation. In or about approximately one week following Plaintiff's complaint to HR, to the best of Plaintiff's recollection, Mr. Alan Judge, a Pest Control Technician and co-employee, stated to Plaintiff that Mr. Judge had received a phone call from Mr. Anthony Keo, supervisor, informing Mr. Judge that Plaintiff had reported Mr. Keo to HR, that Plaintiff "threw [him] under the bus," and that Plaintiff was "off [his] meds," or words to that effect. It is

alleged that Defendants did not advise or sufficiently advise Mr. Anthony Keo, supervisor, about not retaliating against Plaintiff. It is alleged that Defendants did not advise or sufficiently advise Mr. Anthony Keo, supervisor, about not discriminating against Plaintiff. Defendants did not train, instruct, or correct employees, or did not sufficiently train, instruct, or correct employees, who had discriminated against, harassed, or retaliated against Plaintiff including Mr. Anthony Keo, supervisor.

25. In or about approximately a few days following Plaintiff's complaint to HR, Mr. Dave Schumacher, supervisor, made several comments to Plaintiff including that, "Tony and Anthony get away with a lot," "They can do no wrong in their eyes," "They are protected," and, "Your situation is going to be swept under the rug," or words to that effect. Defendants did not train or sufficiently train or instruct employees on anti-harassment, non-discrimination, and non-retaliation. Defendants failed to provide adequate action in response to Plaintiff's complaint.

26. In or about approximately one month or two months prior to Plaintiff's termination, to the best of Plaintiff's recollection, during a meeting that involved all or most of the Pest Control Technicians at the Newtown Square main office location, another Pest Control Technician who was a co-employee whose name Plaintiff does not recollect, openly commented, "Careful what you guys say, because the next thing you know HR is going to be calling you," or words to that effect. It is believed the comment was referring to Plaintiff lodging a complaint of harassment and discrimination with HR. Defendants did not train or instruct employees, or did not sufficiently train or instruct employees, on non-retaliation and/or that retaliation will not be tolerated. Defendants did not train, instruct, or correct, or sufficiently train, instruct, or correct employees who had discriminated against, harassed, or retaliated against Plaintiff. Defendants did not train

or instruct, or sufficiently train or instruct, employees on anti-harassment, non-discrimination, and non-retaliation.

27. Further, Plaintiff recollects and wishes to point out that, in addition to the harassment described above, that Mr. Anthony Keo, supervisor, had repeatedly made offensive racial comments such as referring to African-American or Black people in general with the slur, "nigger" ("n----r"), referring to Mr. Alan Judge, Pest Control Technician and Plaintiff's co-employee, as "nigga" ("n---a"), making a comment about Black people being on welfare, or words to that effect, and making a comment that Moyer has a quota for Black people, and when one is terminated they need to find another one, or words to that effect.

28. Plaintiff experienced harassment from a supervisor/manager, and tangible employment actions in the form of a Performance Improvement Plan ("PIP"), and being wrongfully terminated.

29. On January 16, 2025, Plaintiff was provided a PIP. It should be noted that this was the first form of written counseling, PIP, or other written discipline that Plaintiff alleges he received since he began employment with Defendants beginning in or about June 2022. Further, Plaintiff had, to the best of his recollection, received positive annual performance reviews since June 2022 prior to the PIP document. Plaintiff alleges with respect to the PIP document that Defendants began targeting Plaintiff with several pretextual reasons included in the PIP document. While acknowledging the PIP document contains several references to Plaintiff's alleged performance, which from Plaintiff's perspective, Plaintiff disputes the characterization of events in the document, and alleges them to be pretextual reasons, throwing everything at the wall to see what sticks, it should be pointed out that the PIP document does nevertheless state that it is directly penalizing Plaintiff with reference to an occasion that Plaintiff had been late to work due to

"meeting with HR," which Plaintiff alleges is in direct reference to Plaintiff's meeting with Defendants' Human Resources Manager, Ms. Lisa Futchko, about the harassment and discrimination. Further, it is also believed that the alleged instances contained in the PIP document were reported to Defendants by either Mr. Anthony Keo, supervisor, or Mr. Tony Keo, coworker, who were subjects of Plaintiff's prior complaint of harassment.

30. Additionally, the PIP does not say anything about driving, and does not say anything about the corrective action record allegedly provided to Plaintiff on November 18, 2024, though Defendants later claimed to have terminated Plaintiff, at least in part, on the basis of that corrective action record and allegedly due to the company vehicle violation relating to driving alleged in that corrective action record. The PIP makes no mention of either the corrective active record or driving. The only company vehicle violations alleged in the PIP are in reference to two parking tickets Plaintiff received, both of which occurred *before* the date of the alleged company vehicle violation resulting in the November 18, 2024 corrective action record. Plaintiff denies receiving the November 18, 2024 corrective action record.

31. Plaintiff points out that the November 18, 2024 corrective action record does not contain his signature or a date where Plaintiff acknowledged receiving the document, even though each and every other disciplinary action record produced by Defendants concerning Plaintiff contains such a signature and a dated acknowledgement from Plaintiff in the date blank. With respect to other disciplinary records, Defendants even attempted to use the fact that the Plaintiff signed and dated the other disciplinary documents to argue to the EEOC that Plaintiff must, therefore, have acknowledged and agreed with Defendants' position in the documents, though Plaintiff does not. In addition to not being signed or dated by Plaintiff as being received, the November 18, 2024 corrective action record does not also contain any initials in the box labeled,

"Reviewed by," further showing that the document was never reviewed with Plaintiff by Defendants. The section for an employee statement is also not filled out. The corrective action record lacks any indication that the document was actually reviewed with Plaintiff by Defendants or that Plaintiff actually received the document from Defendants. The line for the employee's signature appears to have been struck through by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location with Defendants. Mr. Burns was the individual who eventually wrongfully terminated Plaintiff. The corrective action inconsistently states that it is a "first and final" warning, although "second written" warning is selected on the document. The document was also allegedly prepared four days after the incident and not at the time of the incident. Plaintiff alleges Defendants skipped the first written warning as a step and that Plaintiff never received a first written warning from Defendants. Plaintiff denies having ever received either a first written warning or a second written warning related to an alleged company vehicle violation prior to the circumstances forming the basis of his wrongful termination. Plaintiff contends he was subject to disparate disciplinary action, and was not provided the same or a similar warning, number of warnings, corrective opportunity, or corrective opportunities, which are routinely afforded as progressive discipline to similarly situated employees who are heterosexual. It is alleged that similarly situated employees who are heterosexual are routinely provided with a written warning or multiple written warnings for an alleged company vehicle violation before being terminated. However, Plaintiff never received a written warning prior to his wrongful termination by Defendants. Further, similarly situated heterosexual employees are required to sign and acknowledge a corrective action record, and are, therefore, aware of the record and what to correct moving forward. Plaintiff was not provided the November 18, 2024 corrective action record to sign or acknowledge the document.

32. The PIP document further states, "We will review this PIP in 30 days and then again in 60 days." Plaintiff alleges that a subsequent review of his work performance in thirty (30) days, and in sixty (60) days, did not occur, as stated. Plaintiff was instead terminated. Plaintiff alleges that this constitutes a deviation or an inconsistency in the application of the Defendants' procedures, rules, corrective opportunities, and/or disparate disciplinary treatment or disparate disciplinary action taken against Plaintiff.

33. Before sixty days (60) had elapsed, and without conducting any subsequent counseling thirty (30) days later, or sixty (60) days later, as was indicated would occur, instead, on or about March 12, 2025, Plaintiff was notified by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location, that Plaintiff was being terminated. Mr. Dan Schumacher was the other individual present during the termination meeting.

34. It is also believed and therefore averred that similarly situated employees outside of Plaintiff's protected class have engaged in similar alleged conduct as was alleged with respect to Plaintiff but were not disciplined, were not adequately disciplined, were not disciplined in the same or a similar manner as Plaintiff, and/or were not terminated. It is believed and therefore averred that other similarly situated employees were treated differently and more favorably by being provided corrective opportunities that Plaintiff was not similarly provided. Plaintiff was not provided corrective opportunities in the same manner as his co-employees. This is believed and therefore averred to have included, for example: Mr. Anthony Keo, supervisor, who was driving and eating with one or more hands off the wheel, and driving while on the phone with Plaintiff with one or more hands off the wheel, but Mr. Anthony Keo was not disciplined. Mr. Tony Keo, coworker, was allowed to sleep on the job while in his vehicle, and was not disciplined by his brother, Mr. Anthony Keo, supervisor, or, it is believed, anyone else. Mr. Mike Sidell (sp.), Pest

Control Technician, had multiple infractions related to his vehicle and continued to work for Defendants. Mr. Matt Moore, Pest Control Technician, totaled a vehicle and continued to work for Defendants. It is alleged that Defendants subjected Plaintiff to disparate treatment and targeted Plaintiff because of his sexual orientation, sex, gender identity, gender expression, on account of gender stereotypes, and/or on account of his complaint of harassment and discrimination on the basis of his sexual orientation. Defendants would not provide employment records of similarly situated employees to the EEOC, Plaintiff, or Plaintiff's Counsel arguing that these other entities or individuals should not be made privy to that information. Yet Defendants proceeded to attempt to rely on an argument to the EEOC that they treated other employees who committed company vehicle violations similarly by terminating them, thereby making the employment records for those employees, and for any similarly situated employees treated differently, or more favorably, relevant to the instant action.

35. Defendants failed to train or to adequately train their employees, including the employees responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, and non-retaliation. Defendants did not train their employees, including the employees responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, or non-retaliation, or did not sufficiently train their employees, including the employees responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, or non-retaliation, prior to the date of Plaintiff's complaint of harassment and discrimination in December 2024. Defendants also failed to provide training to all of the employees responsible for harassing and discriminating against Plaintiff following Plaintiff's complaint of harassment and discrimination, and/or failed to sufficiently train the employees

responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, and non-retaliation, following his complaint of harassment and discrimination.

36. It should also be pointed out that Plaintiff alleges he was hired at one (1) dollar per hour less, it is believed, than similarly situated employees outside of his protected class, who are heterosexual, who were paid one dollar more in the same position for the same type of work compared to an LGBTQ+ employee like Plaintiff who was paid less for the same type of work. Plaintiff was initially hired at $19.00 per hour when it is believed and averred that employees who are not LGBTQ+ are routinely started at $20.00 per hour. Mr. Alan Judge, who is not LGBTQ+, is less qualified or experienced than Plaintiff, held the same position, performed the same type of work, was hired at or about the same time at Plaintiff, but made $20.00 per hour. Another coworker, Mr. John Adams, Pest Control Technician, who is not LGBTQ+, was also less qualified or experienced than Plaintiff, as he was believed to have lacked the certification that Plaintiff had, but was also believed to be making more per hour than Plaintiff. Ms. Naomi Williams, Customer Service Representative for Lawn Services for Defendants, who had recommended Plaintiff for the position, stated to Plaintiff prior to Plaintiff being employed by Defendants that the company normally started newly hired employees at $20.00 per hour, or words to that effect. Only after Plaintiff complained to his supervisor in or about 2023 about being paid less was he was given a dollar raise to $20.00 per hour by Defendants as a result. It should be noted that Plaintiff alleged compensation discrimination identifying he was hired at one dollar per hour less than similarly situated employees, in his EEOC Charge filed with the EEOC, and in response, in Defendants' Position Statement filed with the EEOC, they did not, technically speaking, address that specific allegation. Plaintiff contends that the inference created by a *prima facie* case of discrimination that goes unrebutted by a legitimate, non-discrimination reason from the employer, is that an

inference of discrimination is created in favor of the employee that the discrimination is more likely than not to have occurred.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, Moyer & Son, Inc.; Moyer & Son, Inc. d/b/a Moyer Pest Control; Moyer & Son Inc.; Moyer & Son; and Moyer Pest Control, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; past and future lost wages and lost earning capacity; diminution in Plaintiff's future earning power; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to remove any reference to Plaintiff's protected activity from Plaintiff's personnel file; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT II:**
**WRONGFUL TERMINATION BASED ON SEXUAL ORIENTATION AND/OR SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000*e*(1)(a), *et seq.***
**(Plaintiff, John Doe v. Defendant, Moyer & Son, Inc., Moyer & Son, Inc. d/b/a Moyer Pest Control, Moyer & Son Inc., Moyer & Son, and Moyer Pest Control)**

37. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

38. Defendants wrongfully terminated Plaintiff on account of his sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes.

39. Plaintiff identifies as gay and gender fluid. Defendants had notice or knowledge of Plaintiff's sexual orientation, gender identity, and/or perceived or assumed Plaintiff to be gay.

40. Plaintiff had a certification and worked for Defendants since June 2022 as a certified Pest Control Technician. Plaintiff completed Defendants' three-month introductory period to Defendants' satisfaction. Plaintiff received multiple pay increases during his employment with Defendants due to satisfactory performance and meeting and/or exceeding expectations. Plaintiff was objectively qualified for the position Plaintiff held with Defendants.

41. Plaintiff experienced harassment and discrimination from a supervisor and from coworkers including but not limited to being called the slur, "f----t," several times, by a coworker, and once by a supervisor, being called "it," being the recipient of other derogatory, homophobic, or anti-gay language, cursing, a sexual comment about Plaintiff's then-husband, and, on one occasion, a coworker who slapped Plaintiff's rear-end hard, and grabbed it with a full hand, which is conduct of a sexual nature and assault. Plaintiff was treated differently by being given disparate disciplinary action or different corrective opportunities compared to his co-employees, Plaintiff was subject to a stricter or a different dress code by Defendants, or Defendants were stricter with Plaintiff's appearance, than Plaintiff's similarly situated co-workers, and Plaintiff alleges he was paid less than his coworkers when he was initially hired.

42. Plaintiff complained of a hostile work environment on December 17, 2024, there was further harassment, discrimination, retaliatory comments, and retaliation, which continued until Plaintiff's wrongful termination on March 12, 2025.

43. Following Plaintiff's complaint of harassment and discrimination based on his sexual orientation, on January 16, 2025, Plaintiff was provided a Performance Improvement Plan ("PIP"). It should be noted that this was the first form of written counseling, PIP, or other written

discipline that Plaintiff alleged he received since he began employment with Defendants beginning in or about June 2022. Further, Plaintiff had, to the best of his recollection, received positive annual performance reviews since June 2022 prior to the PIP document. Plaintiff alleges with respect to the PIP document that Defendants began targeting Plaintiff with several pretextual reasons included in the PIP document. While acknowledging the PIP document contains several references to Plaintiff's alleged performance, which from Plaintiff's perspective, Plaintiff disputes the characterization of events in the document, and alleges them to be pretextual reasons, throwing everything at the wall to see what sticks, it should be pointed out that the PIP document does nevertheless state that it is directly penalizing Plaintiff with reference to an occasion that Plaintiff had been late to work due to "meeting with HR," which Plaintiff alleges is in direct reference to Plaintiff's meeting with Defendants' Human Resources Manager, Ms. Lisa Futchko, about the harassment and discrimination. Further, it is also believed that the alleged instances contained in the PIP document were reported to Defendants by either Mr. Anthony Keo, supervisor, or Mr. Tony Keo, coworker, who were subjects of Plaintiff's prior complaint of harassment.

44. Additionally, the PIP does not say anything about driving, and does not say anything about the corrective action record allegedly provided to Plaintiff on November 18, 2024, though Defendants later claimed to have terminated Plaintiff, at least in part, on the basis of that corrective action record and allegedly due to the company vehicle violation relating to driving alleged in that corrective action record. The PIP makes no mention of either the corrective active record or driving. The only company vehicle violations alleged in the PIP are in reference to two parking tickets Plaintiff received, both of which occurred *before* the date of the alleged company vehicle violation resulting in the November 18, 2024 corrective action record. Plaintiff denies receiving the November 18, 2024 corrective action record.

45. Plaintiff points out that the November 18, 2024 corrective action record does not contain his signature or a date where Plaintiff acknowledged receiving the document, even though each and every other disciplinary action record produced by Defendants concerning Plaintiff contains such a signature and a dated acknowledgement from Plaintiff in the date blank. With respect to other disciplinary records, Defendants even attempted to use the fact that the Plaintiff signed and dated the other disciplinary documents to argue to the EEOC that Plaintiff must, therefore, have acknowledged and agreed with Defendants' position in the documents, though Plaintiff does not. In addition to not being signed or dated by Plaintiff as being received, the November 18, 2024 corrective action record does not also contain any initials in the box labeled, "Reviewed by," further showing that the document was never reviewed with Plaintiff by Defendants. The section for an employee statement is also not filled out. The corrective action record lacks any indication that the document was actually reviewed with Plaintiff by Defendants or that Plaintiff actually received the document from Defendants. The line for the employee's signature appears to have been struck through by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location with Defendants. Mr. Burns was the individual who eventually wrongfully terminated Plaintiff. The corrective action inconsistently states that it is a "first and final" warning, although "second written" warning is selected on the document. The document was also allegedly prepared four days after the incident and not at the time of the incident. Plaintiff alleges Defendants skipped the first written warning as a step and that Plaintiff never received a first written warning from Defendants. Plaintiff denies having ever received either a first written warning or a second written warning related to an alleged company vehicle violation prior to the circumstances forming the basis of his wrongful termination. Plaintiff contends he was subject to disparate disciplinary action, and was not provided the same or a similar warning, number of

warnings, corrective opportunity, or corrective opportunities, which are routinely afforded as progressive discipline to similarly situated employees who are heterosexual. It is alleged that similarly situated employees who are heterosexual are routinely provided with a written warning or multiple written warnings for an alleged company vehicle violation before being terminated. However, Plaintiff never received a written warning prior to his wrongful termination by Defendants. Further, similarly situated heterosexual employees are required to sign, acknowledge, and agree to a corrective action record, and are, therefore, aware of the record and what to correct moving forward. Plaintiff was not provided the November 18, 2024 corrective action record to sign or acknowledge the document.

46. The PIP document further states, "We will review this PIP in 30 days and then again in 60 days." Plaintiff alleges that a subsequent review of his work performance in thirty (30) days, and in sixty (60) days, did not occur, as stated. Plaintiff was instead terminated. Plaintiff alleges that this constitutes a deviation or an inconsistency in the application of the Defendants' procedures or rules and/or disparate disciplinary treatment or disparate disciplinary action taken against Plaintiff.

47. Before sixty days (60) had elapsed, and without conducting any subsequent counseling thirty (30) days later, or sixty (60) days later, as indicated would occur, instead, on or about March 12, 2025, Plaintiff was notified by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location, that Plaintiff was being terminated. Mr. Dan Schumacher, supervisor/manager, was the other individual present during the termination meeting.

48. It is also believed and therefore averred that similarly situated employees outside of Plaintiff's protected class have engaged in similar alleged conduct as alleged by Defendants at the time of Plaintiff's termination, alleged company vehicle violations, but were not disciplined,

disciplined appropriately, or terminated. There are believed to be other employees who engaged in the same or similar alleged conduct as Plaintiff and were not disciplined, disciplined appropriately, or terminated. Plaintiff alleges he was targeted on account of his sexual orientation, sex, gender expression, gender identity, and on account of gender stereotypes, and terminated on account of sexual orientation, sex, gender expression, gender identity, and on account of gender stereotypes after he complained about harassment and discrimination on account of his sexual orientation. Defendants would not provide employment records of similarly situated employees to the EEOC, Plaintiff, or Plaintiff's Counsel arguing that these other entities or individuals should not be made privy to that information. Yet, Defendants proceeded to attempt to rely on an argument to the EEOC that they treated other employees who committed company vehicle violations similarly by terminating them, thereby making the employment records for those employees, and for any similarly situated employees treated differently, or more favorably, relevant to the instant action. The individuals subject to disparate and more favorable treatment, disciplinary action, and corrective opportunities are believed and averred to have included, for example:

a. Mr. Anthony Keo, supervisor, who was driving and eating with one or more hands off the wheel, and driving while on the phone with Plaintiff with one or more hands off the wheel, but Mr. Anthony Keo was not disciplined.

b. Mr. Tony Keo, coworker, was allowed to sleep on the job while in his vehicle, and was not disciplined by his brother, Mr. Anthony Keo, supervisor, or, it is believed, anyone else at Defendants' company.

c. Mr. Mike Sidell (sp.), Pest Control Technician, had multiple infractions and continued to work for Defendants.

d. Mr. Matt Moore, Pest Control Technician, totaled a vehicle and continued to work for Defendants. It is alleged that Defendants subjected Plaintiff to disparate treatment and began targeting Plaintiff after his complaint to HR about discrimination and harassment.

49. It is believed and therefore averred that Defendants replaced Plaintiff with an individual who is outside of Plaintiff's protected class, who was not LGBTQ+, was not gender fluid, and/or that Defendants continued to seek applicants with Plaintiff's job qualifications.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, Moyer & Son, Inc.; Moyer & Son, Inc. d/b/a Moyer Pest Control; Moyer & Son Inc.; Moyer & Son; and Moyer Pest Control, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; past and future lost wages and lost earning capacity; diminution in Plaintiff's future earning power; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to remove any reference to Plaintiff's protected activity from Plaintiff's personnel file; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT III:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a),** ***et seq.***
**(Plaintiff, John Doe v. Defendant, Moyer & Son, Inc., Moyer & Son, Inc. d/b/a Moyer Pest Control, Moyer & Son Inc., Moyer & Son, and Moyer Pest Control)**

50. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

51. Plaintiff was terminated on March 12, 2025 on account of retaliation for his protected conduct or activity in violation of 42 U.S.C. § 2000e-3(a) of Title VII which protects employees from retaliation for exercising their rights with respect to the provisions of Title VII.

52. On or about December 17, 2024, Plaintiff informed Ms. Futchko, Human Resources Manager, Mr. Hudson, supervisor, and Mr. Schumacker, supervisor, that Plaintiff was being subject to inappropriate comments including referred to by the slur, "f----t," multiple times, including specifically by Mr. Tony Keo, coworker. Within the next couple of days, Plaintiff subsequently notified Ms. Futchko, Human Resources Manager, that by Mr. Anthony Keo, supervisor/manager, had also used the slur. Plaintiff's complaints of harassment and discrimination constituted protected conduct/activity under Title VII.

53. Following Plaintiff's initial report of harassment to the Human Resources Manager, Ms. Futchko, on or about December 17, 2024, approximately within the next couple of days, to the best of Plaintiff's recollection, Mr. Anthony Keo, supervisor, contacted Plaintiff by phone and stated, "Keep my fucking name out of your mouth," "I don't want to be involved in this," and "This is between you and my brother," meaning Mr. Tony Keo, or words to that effect.

54. In or about approximately one week following Plaintiff's complaint to HR, to the best of Plaintiff's recollection, Mr. Alan Judge, a Pest Control Technician and co-employee, stated to Plaintiff that Mr. Judge had received a phone call from Mr. Anthony Keo, supervisor, informing Mr. Judge that Plaintiff had reported Mr. Keo to HR, that Plaintiff "threw [him] under the bus," and that Plaintiff was "off [his] meds," or words to that effect.

55. In or about approximately a few days following Plaintiff's complaint to HR, Mr. Dave Schumacher, supervisor, made several comments to Plaintiff including that, "Tony and Anthony get away with a lot," "They can do no wrong in their eyes," "They are protected," and, "Your situation is going to be swept under the rug," or words to that effect.

56. In or about approximately one month or two months prior to Plaintiff's termination, to the best of Plaintiff's recollection, during a meeting that involved all or most of the Pest Control Technicians at the Newtown Square main office location, another Pest Control Technician who was a co-employee whose name Plaintiff does not recollect, openly commented, "Careful what you guys say, because the next thing you know HR is going to be calling you," or words to that effect.

57. On January 16, 2025, Plaintiff was provided a PIP. The PIP document mentions Plaintiff's protected conduct/activity, "meeting with HR." The PIP document states that it is directly penalizing Plaintiff with reference to an occasion that Plaintiff had been late to work due to "meeting with HR," which Plaintiff alleges is in direct reference to Plaintiff's meeting with Defendants' Human Resources Manager, Ms. Lisa Futchko, about the harassment and discrimination. Further, it is also believed that the alleged instances contained in the PIP document were reported to Defendants by either Mr. Anthony Keo, supervisor, or Mr. Tony Keo, coworker, who were subjects of Plaintiff's prior complaint of harassment.

58. Plaintiff alleges timing plus intervening antagonism, or a highly strained work environment, from the time period of his protected conduct/activity until the time of adverse employment action alleged, Plaintiff's retaliatory discharge/termination. Plaintiff points to the retaliatory comments/statements made to Plaintiff about his complaint contained above and to the circumstances of the PIP.

59. Plaintiff also identifies several inconsistencies, or what Plaintiff contends constitute inconsistent statements. Defendants contend Plaintiff received a November 18, 2024 corrective action record related to a company vehicle violation. Plaintiff denies receiving the November 18, 2024 corrective action record. The PIP does not mention the corrective action record dated November 18, 2024. The PIP does not say anything about driving, and does not say anything about the corrective action record allegedly provided to Plaintiff on November 18, 2024, though Defendants later claimed to have terminated Plaintiff, at least in part, on the basis of that corrective action record and allegedly due to the company vehicle violation relating to driving alleged in that corrective action record. The PIP makes no mention of either the corrective active record or driving. The only company vehicle violations alleged in the PIP are in reference to two parking tickets Plaintiff received, both of which occurred *before* the date of the alleged company vehicle violation resulting in the November 18, 2024 corrective action record. The PIP does not reference the corrective action record dated November 18, 2024, does not make reference to the reason for the November 18, 2024 corrective action record, and does not ultimately identify the alleged reason for Plaintiff's termination.

60. Plaintiff alleges an inconsistency, or an inconsistent statement, in that Defendants contend that Plaintiff was provided a written warning, the November 18, 2024 corrective action record, when Plaintiff contends he did not receive the November 18, 2024 corrective action record. Plaintiff points out that the November 18, 2024 corrective action record does not contain his signature or a date where Plaintiff acknowledged receiving the document, even though each and every other disciplinary action record produced by Defendants concerning Plaintiff contains such a signature and a dated acknowledgement from Plaintiff in the date blank. With respect to other disciplinary records, Defendants even attempted to use the fact that the Plaintiff signed and dated

the other disciplinary documents to argue to the EEOC that Plaintiff must, therefore, have acknowledged and agreed with Defendants' position in the documents, though Plaintiff does not. In addition to not being signed or dated by Plaintiff as having been received, the November 18, 2024 corrective action record does not also contain any initials in the box labeled, "Reviewed by," further showing that the document was never reviewed with Plaintiff by Defendants. The section for an employee statement is also not filled out. The corrective action record lacks any indication that the document was actually reviewed with Plaintiff by Defendants or that Plaintiff actually received the document from Defendants. The line for the employee's signature appears to have been struck through by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location with Defendants. Mr. Burns was the individual who eventually terminated Plaintiff in retaliation for his protected conduct/activity. The November 18, 2024 corrective action record was also allegedly prepared four days after the incident and not at the time of the incident.

61. It is alleged that the PIP document this was the first form of written counseling, PIP, or other written discipline that Plaintiff alleges he received since he began employment with Defendants beginning in or about June 2022.

62. In addition, Plaintiff had, to the best of his recollection, received positive annual performance reviews since June 2022 prior to the PIP document.

63. Plaintiff identifies an additional alleged inconsistency in that Defendants, on the November 18, 2024 corrective action record, identified the warning as the "second" written warning, but also as the "first and final" written warning. The corrective action inconsistently states that it is a "first and final" warning, although "second written" warning is selected on the document. Plaintiff denies having received the November 18, 2024 corrective action record. Defendants allegedly skipped a step of discipline in the company's progressive discipline system,

the first written warning. Plaintiff alleges Defendants skipped the first written warning as a step and that Plaintiff never received a first written warning from Defendants. Plaintiff denies having ever received either a first written warning or a second written warning related to an alleged company vehicle violation prior to the circumstances forming the basis of his termination.

64. Plaintiff identifies a further inconsistency, or inconsistent statement, in that the PIP document further states, "We will review this PIP in 30 days and then again in 60 days." Plaintiff alleges that a subsequent review of his work performance in thirty (30) days, and in sixty (60) days, did not occur, as stated. Plaintiff alleges that this constitutes an inconsistent statement, and ultimately a deviation or an inconsistency in the application of the Defendants' procedures, rules, corrective opportunities, and/or disparate disciplinary treatment or disparate disciplinary action taken against Plaintiff.

65. Before sixty days (60) had elapsed, and without conducting any subsequent counseling thirty (30) days later, or sixty (60) days later, as was indicated would occur, instead, on or about March 12, 2025, Plaintiff was notified by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location, that Plaintiff was being terminated. Mr. Dan Schumacher was the other individual present during the termination meeting.

66. Defendants did not train or sufficiently train or instruct employees on non-retaliation prior to Plaintiff's complaint of harassment and discrimination. Defendants failed to provide adequate action in response to Plaintiff's complaint. Defendants did not train, instruct, or correct employees, or did not sufficiently train, instruct, or correct employees, who had discriminated against, harassed, or retaliated against Plaintiff including Mr. Anthony Keo, supervisor. It is alleged that Defendants did not advise or sufficiently advise employees about not retaliating against Plaintiff following his complaint of harassment and discrimination.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, Moyer & Son, Inc.; Moyer & Son, Inc. d/b/a Moyer Pest Control; Moyer & Son Inc.; Moyer & Son; and Moyer Pest Control, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; past and future lost wages and lost earning capacity; diminution in Plaintiff's future earning power; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to remove any reference to Plaintiff's protected activity from Plaintiff's personnel file; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT IV:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON SEXUAL ORIENTATION AND/OR SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA"), 43 P.S. § 951, *et seq.***
**(Plaintiff, John Doe v. Defendant, Moyer & Son, Inc., Moyer & Son, Inc. d/b/a Moyer Pest Control, Moyer & Son Inc., Moyer & Son, and Moyer Pest Control)**

67. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

68. Plaintiff suffered a hostile work environment based on sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes in violation of the Pennsylvania Human Relations Act ("PHRA"), codified at 43 P.S. § 951, *et seq.*, including 43 P.S. § 955(a).

69. Plaintiff was subject to harassment/a hostile work environment on the basis of his sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes, during his employment with Defendants, in violation of the PHRA, 43 P.S. § 951.

70. The PHRA, codified at 43 P.S. § 955(a), provides, in pertinent part, that, "It shall be an unlawful discriminatory practice … (a) For any employer because of the … sex … or non-job related handicap or disability … of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract … ." 43 P.S. § 955(a). The Pennsylvania Human Relations Commission ("PHRC") issued guidance, on August 2, 2018, which has defined "sex" as including "sexual orientation," "gender identity," and "gender expression." *See* Pennsylvania Human Relations Commission Guidance dated August 2, 2018.

71. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes, in violation of § 955(a) of the PHRA. *See* 43 P.S. § 955(a). Defendants subjected Plaintiff to harassment/a hostile work environment during Plaintiff's employment with Defendants on the basis of Plaintiff's sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes in violation of § 955(a) of the PHRA. At all times relevant hereto, Defendants acted with intent to discriminate.

72. Defendants engaged in an unlawful discriminatory practice in violation of § 955(e) of the PHRA by aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct complained of herein. *See* 43 P.S. § 955(e).

73. Plaintiff identifies as gay and gender fluid. Defendants had notice or knowledge of Plaintiff's sexual orientation, gender identity, and/or perceived or assumed Plaintiff to be gay.

74. Plaintiff experienced harassment and discrimination from a supervisor and from coworkers including but not limited to being called the slur, "f----t," several times, by a coworker, and once by a supervisor, being called "it," being the recipient of other derogatory, homophobic, or anti-gay language, cursing, a sexual comment about Plaintiff's then-husband, and, on one occasion, a coworker who slapped Plaintiff's rear-end hard, and grabbed it with a full hand, which is conduct of a sexual nature and assault. Plaintiff was treated differently by being given disparate disciplinary action or different corrective opportunities compared to his co-employees, Plaintiff was subject to a stricter or a different dress code by Defendants, or Defendants were stricter with Plaintiff's appearance, than Plaintiff's similarly situated co-workers, and Plaintiff alleges he was paid less than his coworkers when he was initially hired.

75. Plaintiff complained of a hostile work environment on December 17, 2024, there was further harassment, discrimination, retaliatory comments, and retaliation, which continued until Plaintiff's wrongful termination on March 12, 2025.

76. Defendants failed to provide prompt and appropriate action to prevent, correct, and remedy harassment and discrimination, and Plaintiff also suffered tangible employment actions including being provided a corrective action, a PIP, and being terminated following Plaintiff's complaint of harassment.

77. Defendants did not train their employees, including the employees responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, or non-retaliation, or did not sufficiently train their employees, including the employees responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, or non-

retaliation, prior to the date of Plaintiff's complaint of harassment and discrimination in December 2024. Defendants failed to train or to adequately train their employees, including the employees responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, and non-retaliation. Defendants also failed to provide training to all of the employees responsible for harassing and discriminating against Plaintiff following Plaintiff's complaint of harassment and discrimination, and/or failed to sufficiently train the employees responsible for harassing and discriminating against Plaintiff, on non-discrimination, anti-harassment, and non-retaliation, following his complaint of harassment and discrimination.

78. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of the PHRA at § 955.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, Moyer & Son, Inc.; Moyer & Son, Inc. d/b/a Moyer Pest Control; Moyer & Son Inc.; Moyer & Son; and Moyer Pest Control, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; past and future lost wages and lost earning capacity; diminution in Plaintiff's future earning power; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to remove any reference to Plaintiff's protected activity from Plaintiff's personnel file; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT V:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION AND/OR SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951, *et seq.***
**(Plaintiff, John Doe v. Defendant, Moyer & Son, Inc., Moyer & Son, Inc. d/b/a Moyer Pest Control, Moyer & Son Inc., Moyer & Son, and Moyer Pest Control)**

79. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

80. Defendants wrongfully discharged/terminated Plaintiff on March 12, 2025 on account of his sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, including 43 P.S. § 955(a).

81. Plaintiff identifies as gay and gender fluid. Defendants had notice or knowledge of Plaintiff's sexual orientation, gender identity, and/or perceived or assumed Plaintiff to be gay.

82. Plaintiff had a certification and worked for Defendants since June 2022 as a certified Pest Control Technician. Plaintiff completed Defendants' three-month introductory period to Defendants' satisfaction. Plaintiff received multiple pay increases during his employment with Defendants due to satisfactory performance and meeting and/or exceeding expectations. Plaintiff was objectively qualified for the position Plaintiff held with Defendants.

83. Plaintiff experienced harassment and discrimination from a supervisor and from coworkers including but not limited to being called the slur, "f----t," several times, by a coworker, and once by a supervisor, being called "it," being the recipient of other derogatory, homophobic, or anti-gay language, cursing, a sexual comment about Plaintiff's then-husband, and, on one occasion, a coworker who slapped Plaintiff's rear-end hard, and grabbed it with a full hand, which is conduct of a sexual nature and assault. Plaintiff was treated differently by being given disparate disciplinary action or different corrective opportunities compared to his co-employees, Plaintiff

was subject to a stricter or a different dress code by Defendants, or Defendants were stricter with Plaintiff's appearance, than Plaintiff's similarly situated co-workers, and Plaintiff alleges he was paid less than his coworkers when he was initially hired.

84. Plaintiff complained of a hostile work environment on December 17, 2024, there was further harassment, discrimination, retaliatory comments, and retaliation, which continued until Plaintiff's wrongful termination on March 12, 2025.

85. Following Plaintiff's complaint of harassment and discrimination based on his sexual orientation, on January 16, 2025, Plaintiff was provided a Performance Improvement Plan ("PIP"). It should be noted that this was the first form of written counseling, PIP, or other written discipline that Plaintiff alleges he received since he began employment with Defendants beginning in or about June 2022. Further, Plaintiff had, to the best of his recollection, received positive annual performance reviews since June 2022 prior to the PIP document. Plaintiff alleges with respect to the PIP document that Defendants began targeting Plaintiff with several pretextual reasons included in the PIP document. While acknowledging the PIP document contains several references to Plaintiff's alleged performance, which from Plaintiff's perspective, Plaintiff disputes the characterization of events in the document, and alleges them to be pretextual reasons, throwing everything at the wall to see what sticks, it should be pointed out that the PIP document does nevertheless state that it is directly penalizing Plaintiff with reference to an occasion that Plaintiff had been late to work due to "meeting with HR," which Plaintiff alleges is in direct reference to Plaintiff's meeting with Defendants' Human Resources Manager, Ms. Lisa Futchko, about the harassment and discrimination. Further, it is also believed that the alleged instances contained in the PIP document were reported to Defendants by either Mr. Anthony Keo, supervisor, or Mr. Tony Keo, coworker, who were subjects of Plaintiff's prior complaint of harassment.

86. Additionally, the PIP does not say anything about driving, and does not say anything about the corrective action record allegedly provided to Plaintiff on November 18, 2024, though Defendants later claimed to have terminated Plaintiff, at least in part, on the basis of that corrective action record and allegedly due to the company vehicle violation relating to driving alleged in that corrective action record. The PIP makes no mention of either the corrective active record or driving. The only company vehicle violations alleged in the PIP are in reference to two parking tickets Plaintiff received, both of which occurred *before* the date of the alleged company vehicle violation resulting in the November 18, 2024 corrective action record. Plaintiff denies receiving the November 18, 2024 corrective action record.

87. Plaintiff points out that the November 18, 2024 corrective action record does not contain his signature or a date where Plaintiff acknowledged receiving the document, even though each and every other disciplinary action record produced by Defendants concerning Plaintiff contains such a signature and a dated acknowledgement from Plaintiff in the date blank. With respect to other disciplinary records, Defendants even attempted to use the fact that the Plaintiff signed and dated the other disciplinary documents to argue to the EEOC that Plaintiff must, therefore, have acknowledged and agreed with Defendants' position in the documents, though Plaintiff does not. In addition to not being signed or dated by Plaintiff as being received, the November 18, 2024 corrective action record does not also contain any initials in the box labeled, "Reviewed by," further showing that the document was never reviewed with Plaintiff by Defendants. The section for an employee statement is also not filled out. The corrective action record lacks any indication that the document was actually reviewed with Plaintiff by Defendants or that Plaintiff actually received the document from Defendants. The line for the employee's signature appears to have been struck through by Mr. Brian Burns, Branch Manager of Defendants'

Newtown Square location with Defendants. Mr. Burns was the individual who eventually wrongfully terminated Plaintiff. The corrective action inconsistently states that it is a "first and final" warning, although "second written" warning is selected on the document. The document was also allegedly prepared four days after the incident and not at the time of the incident. Plaintiff alleges Defendants skipped the first written warning as a step and that Plaintiff never received a first written warning from Defendants. Plaintiff denies having ever received either a first written warning or a second written warning related to an alleged company vehicle violation prior to the circumstances forming the basis of his wrongful termination. Plaintiff contends he was subject to disparate disciplinary action, and was not provided the same or a similar warning, number of warnings, corrective opportunity, or corrective opportunities, which are routinely afforded as progressive discipline to similarly situated employees who are heterosexual. It is alleged that similarly situated employees who are heterosexual are routinely provided with a written warning or multiple written warnings for an alleged company vehicle violation before being terminated. However, Plaintiff never received a written warning prior to his wrongful termination by Defendants. Further, similarly situated heterosexual employees are required to sign, acknowledge, and agree to a corrective action record, and are, therefore, aware of the record and what to correct moving forward. Plaintiff was not provided the November 18, 2024 corrective action record to sign or acknowledge the document.

88. The PIP document further states, "We will review this PIP in 30 days and then again in 60 days." Plaintiff alleges that a subsequent review of his work performance in thirty (30) days, and in sixty (60) days, did not occur, as stated. Plaintiff was instead terminated. Plaintiff alleges that this constitutes a deviation or an inconsistency in the application of the Defendants'

procedures or rules and/or disparate disciplinary treatment or disparate disciplinary action taken against Plaintiff.

89. Before sixty days (60) had elapsed, and without conducting any subsequent counseling thirty (30) days later, or sixty (60) days later, as indicated would occur, instead, on or about March 12, 2025, Plaintiff was notified by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location, that Plaintiff was being terminated. Mr. Dan Schumacher, supervisor/manager, was the other individual present during the termination meeting.

90. It is also believed and therefore averred that similarly situated employees outside of Plaintiff's protected class have engaged in similar alleged conduct as alleged by Defendants at the time of Plaintiff's termination, allegedly not driving safely, but were not disciplined, disciplined appropriately, or terminated. There are believed to be other employees who engaged in the same or similar alleged conduct as Plaintiff and were not disciplined, disciplined appropriately, or terminated. Plaintiff alleges he was targeted on account of his sexual orientation, sex, gender expression, gender identity, and on account of gender stereotypes, and then terminated after he complained about harassment and discrimination on account of his sexual orientation. Defendants would not provide employment records of similarly situated employees to the EEOC, Plaintiff, or Plaintiff's Counsel arguing that these other entities or individuals should not be made privy to that information. Yet Defendants proceeded to attempt to rely on an argument to the EEOC that they treated other employees who committed company vehicle infractions similarly by terminating them, thereby making the employment records for those employees, and for any similarly situated employees treated differently, or more favorably, relevant to the instant action. The individuals subject to disparate and more favorable treatment, disciplinary action, and corrective opportunities are believed and averred to have included, for example:

a. Mr. Anthony Keo, supervisor, who was driving and eating with one or more hands off the wheel, and driving while on the phone with Plaintiff with one or more hands off the wheel, but Mr. Anthony Keo was not disciplined.

b. Mr. Tony Keo, coworker, was allowed to sleep on the job while in his vehicle, and was not disciplined by his brother, Mr. Anthony Keo, supervisor, or, it is believed, anyone else at Defendants' company.

c. Mr. Mike Sidell (sp.), Pest Control Technician, had multiple infractions and continued to work for Defendants.

d. Mr. Matt Moore, Pest Control Technician, totaled a vehicle and continued to work for Defendants. It is alleged that Defendants subjected Plaintiff to disparate treatment and began targeting Plaintiff after his complaint to HR about discrimination and harassment.

91. It is believed and therefore averred that Defendants replaced Plaintiff with an individual who is outside of Plaintiff's protected class, who was not LGBTQ+, was not gender fluid, and/or that Defendants continued to seek applicants with Plaintiff's job qualifications.

92. Defendants wrongfully terminated Plaintiff based on his sexual orientation, sex, gender identity, gender expression, and/or on account of gender stereotypes, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and Plaintiff makes a claim against Defendants under all of the applicable paragraphs of the PHRA at § 955.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, Moyer & Son, Inc.; Moyer & Son, Inc. d/b/a Moyer Pest Control; Moyer & Son Inc.; Moyer & Son; and Moyer Pest Control, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and

front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; past and future lost wages and lost earning capacity; diminution in Plaintiff's future earning power; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to remove any reference to Plaintiff's protected activity from Plaintiff's personnel file; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT VI:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 955(d)**
**(Plaintiff, John Doe v. Defendant, Moyer & Son, Inc., Moyer & Son, Inc. d/b/a Moyer Pest Control, Moyer & Son Inc., Moyer & Son, and Moyer Pest Control)**

93. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

94. Plaintiff was terminated on March 12, 2025 on account of retaliation for his protected conduct or activity under the Pennsylvania Human Relations Act, 43 P.S. § 955(d)

95. The PHRA, at 43 P.S. § 955(d), provides, in pertinent part, that it shall be an "unlawful discriminatory practice" "for any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act … ." 43 P.S. § 955(d).

96. On or about December 17, 2024, Plaintiff informed Ms. Futchko, Human Resources Manager, Mr. Hudson, supervisor, and Mr. Schumacker, supervisor, that Plaintiff was being subject to inappropriate comments including referred to by the slur, "f----t," multiple times, including specifically by Mr. Tony Keo, coworker. Within the next couple of days, Plaintiff

subsequently notified Ms. Futchko, Human Resources Manager, that by Mr. Anthony Keo, supervisor/manager, had also used the slur. Plaintiff's complaints of harassment and discrimination constituted protected conduct/activity under the Pennsylvania Human Relations Act.

97. Following Plaintiff's initial report of harassment to the Human Resources Manager, Ms. Futchko, on or about December 17, 2024, approximately within the next couple of days, to the best of Plaintiff's recollection, Mr. Anthony Keo, supervisor, contacted Plaintiff by phone and stated, "Keep my fucking name out of your mouth," "I don't want to be involved in this," and "This is between you and my brother," meaning Mr. Tony Keo, or words to that effect.

98. In or about approximately one week following Plaintiff's complaint to HR, to the best of Plaintiff's recollection, Mr. Alan Judge, a Pest Control Technician and co-employee, stated to Plaintiff that Mr. Judge had received a phone call from Mr. Anthony Keo, supervisor, informing Mr. Judge that Plaintiff had reported Mr. Keo to HR, that Plaintiff "threw [him] under the bus," and that Plaintiff was "off [his] meds," or words to that effect.

99. In or about approximately a few days following Plaintiff's complaint to HR, Mr. Dave Schumacher, supervisor, made several comments to Plaintiff including that, "Tony and Anthony get away with a lot," "They can do no wrong in their eyes," "They are protected," and, "Your situation is going to be swept under the rug," or words to that effect.

100. In or about approximately one month or two months prior to Plaintiff's termination, to the best of Plaintiff's recollection, during a meeting that involved all or most of the Pest Control Technicians at the Newtown Square main office location, another Pest Control Technician who was a co-employee whose name Plaintiff does not recollect, openly commented, "Careful what

you guys say, because the next thing you know HR is going to be calling you," or words to that effect.

101. On January 16, 2025, Plaintiff was provided a PIP. The PIP document mentions Plaintiff's protected conduct/activity, "meeting with HR." The PIP document states that it is directly penalizing Plaintiff with reference to an occasion that Plaintiff had been late to work due to "meeting with HR," which Plaintiff alleges is in direct reference to Plaintiff's meeting with Defendants' Human Resources Manager, Ms. Lisa Futchko, about the harassment and discrimination. Further, it is also believed that the alleged instances contained in the PIP document were reported to Defendants by either Mr. Anthony Keo, supervisor, or Mr. Tony Keo, coworker, who were subjects of Plaintiff's prior complaint of harassment.

102. Plaintiff alleges timing plus intervening antagonism, or a highly strained work environment, from the time period of his protected conduct/activity until the time of adverse employment action alleged, Plaintiff's retaliatory discharge/termination. Plaintiff points to the retaliatory comments/statements made to Plaintiff about his complaint contained above and to the circumstances of the PIP.

103. Plaintiff also identifies several inconsistencies, or what Plaintiff contends constitute inconsistent statements. Defendants contend Plaintiff received a November 18, 2024 corrective action record related to a company vehicle violation. Plaintiff denies receiving the November 18, 2024 corrective action record. The PIP does not mention the corrective action record dated November 18, 2024. The PIP does not say anything about driving, and does not say anything about the corrective action record allegedly provided to Plaintiff on November 18, 2024, though Defendants later claimed to have terminated Plaintiff, at least in part, on the basis of that corrective action record and allegedly due to the company vehicle violation relating to driving alleged in that

corrective action record. The PIP makes no mention of either the corrective active record or driving. The only company vehicle violations alleged in the PIP are in reference to two parking tickets Plaintiff received, both of which occurred *before* the date of the alleged company vehicle violation resulting in the November 18, 2024 corrective action record. The PIP does not reference the corrective action record dated November 18, 2024, does not make reference to the reason for the November 18, 2024 corrective action record, and does not ultimately identify the alleged reason for Plaintiff's termination.

104. Plaintiff alleges an inconsistency, or an inconsistent statement, in that Defendants contend that Plaintiff was provided a written warning, the November 18, 2024 corrective action record, when Plaintiff contends he did not receive the November 18, 2024 corrective action record. Plaintiff points out that the November 18, 2024 corrective action record does not contain his signature or a date where Plaintiff acknowledged receiving the document, even though each and every other disciplinary action record produced by Defendants concerning Plaintiff contains such a signature and a dated acknowledgement from Plaintiff in the date blank. With respect to other disciplinary records, Defendants even attempted to use the fact that the Plaintiff signed and dated the other disciplinary documents to argue to the EEOC that Plaintiff must, therefore, have acknowledged and agreed with Defendants' position in the documents, though Plaintiff does not. In addition to not being signed or dated by Plaintiff as having been received, the November 18, 2024 corrective action record does not also contain any initials in the box labeled, "Reviewed by," further showing that the document was never reviewed with Plaintiff by Defendants. The section for an employee statement is also not filled out. The corrective action record lacks any indication that the document was actually reviewed with Plaintiff by Defendants or that Plaintiff actually received the document from Defendants. The line for the employee's signature appears to have

been struck through by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location with Defendants. Mr. Burns was the individual who eventually terminated Plaintiff in retaliation for his protected conduct/activity. The November 18, 2024 corrective action record was also allegedly prepared four days after the incident and not at the time of the incident.

105. It is alleged that the PIP document was the first form of written counseling, PIP, or other written discipline that Plaintiff alleges he received since he began employment with Defendants beginning in or about June 2022.

106. In addition, Plaintiff had, to the best of his recollection, received positive annual performance reviews since June 2022 prior to the PIP document.

107. Plaintiff identifies an additional alleged inconsistency in that Defendants, on the November 18, 2024 corrective action record, identified the warning as the "second" written warning, but also as the "first and final" written warning. The corrective action inconsistently states that it is a "first and final" warning, although "second written" warning is selected on the document. Plaintiff denies having received the November 18, 2024 corrective action record. Defendants allegedly skipped a step of discipline in the company's progressive discipline system, the first written warning. Plaintiff alleges Defendants skipped the first written warning as a step and that Plaintiff never received a first written warning from Defendants. Plaintiff denies having ever received either a first written warning or a second written warning related to an alleged company vehicle violation prior to the circumstances forming the basis of his termination.

108. Plaintiff identifies a further inconsistency, or inconsistent statement, in that the PIP document further states, "We will review this PIP in 30 days and then again in 60 days." Plaintiff alleges that a subsequent review of his work performance in thirty (30) days, and in sixty (60) days, did not occur, as stated. Plaintiff alleges that this constitutes an inconsistent statement, and

ultimately a deviation or an inconsistency in the application of the Defendants' procedures, rules, corrective opportunities, and/or disparate disciplinary treatment or disparate disciplinary action taken against Plaintiff.

109. Before sixty days (60) had elapsed, and without conducting any subsequent counseling thirty (30) days later, or sixty (60) days later, as was indicated would occur, instead, on or about March 12, 2025, Plaintiff was notified by Mr. Brian Burns, Branch Manager of Defendants' Newtown Square location, that Plaintiff was being terminated. Mr. Dan Schumacher was the other individual present during the termination meeting.

110. Defendants did not train or sufficiently train or instruct employees on non-retaliation prior to Plaintiff's complaint of harassment and discrimination. Defendants failed to provide adequate action in response to Plaintiff's complaint. Defendants did not train, instruct, or correct employees, or did not sufficiently train, instruct, or correct employees, who had discriminated against, harassed, or retaliated against Plaintiff including Mr. Anthony Keo, supervisor. It is alleged that Defendants did not advise or sufficiently advise employees about not retaliating against Plaintiff following his complaint of harassment and discrimination.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, Moyer & Son, Inc.; Moyer & Son, Inc. d/b/a Moyer Pest Control; Moyer & Son Inc.; Moyer & Son; and Moyer Pest Control, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; past and future lost wages and lost earning capacity; diminution in Plaintiff's future earning power; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys'

fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to remove any reference to Plaintiff's protected activity from Plaintiff's personnel file; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

## V. JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

DATED: 08/26/2026

Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff,*
*John Doe*

**VERIFICATION**

I hereby certify that I am the Plaintiff in the within action, and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 08/26/2026

By: [redacted] (Aug 26, 2026 15:10:21 EDT)

[redacted]

**CERTIFICATE OF SERVICE**

I, JUSTIN F. ROBINETTE, ESQUIRE, hereby certify that on this 26th day of AUGUST, 2026, or as soon thereafter as service can be effectuated, I caused to be served a true and correct copy of the foregoing document on the following persons, and via the method, set forth below:

***VIA ELECTRONIC MAIL WITH NOTICE OF LAWSUIT AND REQUEST TO WAIVE SERVICE OF SUMMONS***

Daniel M. Lieberman, Esquire
Jody Shelby, Esquire
Cipriani & Werner, P.C.
45 East Orange Street
Lancaster, PA 17602
E-mail: DLieberman@c-wlaw.com
JShelby@c-wlaw.com

*Attorneys for Defendants*

DATED: 08/26/2026

Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff,*
*John Doe*